## JOHN GILL v. STATE.

No. A-6754. Opinion Filed September 21, 1929.
Rehearing Denied October 19, 1929.
(281 Pac. 163.)

Bridges & Ivy and Jones & Clift, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter called the defendant, was charged by information with the crime of murder, and convicted of manslaughter in the second degree and sentenced to serve a term of three years in the penitentiary. Motion for new trial was filed, considered, and overruled, and defendant has appealed to this court.

The testimony of the state is that John Hodges and R. A. Grimes, on the 23d day of November, 1926, had gone to the home of a brother and Mr. Grimes for the purpose of getting a cow and loading the cow in the truck and driving back to the home of R. A. Grimes, in the city of Waurika, and the said Hodges and Grimes were returning along the Meridian highway, a short distance south of Waurika; just south of where the killing occurred there is somewhat of an incline with a short left turn in the road and then a short distance and another turn, which goes down the hill. The proof further shows that it was on the road where it straightens out to the north, and about 75 yards from the turn that Grimes and Hodges had some trouble with the truck Grimes was

driving, and the lights of the truck went out; Grimes stopped the truck on the east side of the road, the west wheels being on the traveled road from 3 to 5 feet, leaving a space from 20 to 25 feet of the highway on the west of the truck along which travelers could pass; when the truck stopped deceased got out on the east side and took a lantern and some tin foil for the purpose of repairing the lighting system. Deceased walked towards the southeast corner of the truck, and remarked that a car was coming at a rapid rate of speed from the south. Grimes says he heard the engine of the car as it came thundering up back of them, and the automobile dashed by the west side of the truck barely missing the truck, coming at a rate of speed from 50 to 60 miles an hour. When the automobile passed the truck Grimes says he noticed something under it, but could not tell what the object was; that the automobile continued down the hill at a rapid rate of speed and he got off the truck to see if he could find the deceased, and discovered the body of the deceased in the highway about 25 yards north of the front part of the truck. Deceased was either dead or breathing his last at the time the witness got to him. Deceased was bleeding from a severe cut on his scalp and also from his body. Grimes says he "drug" his body out of the road, and later the body was taken to Waurika to the undertaker's establishment.

The testimony further shows that upon an examination it was found that the skull was crushed, collar bone broken, and other severe cuts and bruises on other parts of the body; the attending physician testifying that the wounds on deceased's body were sufficient to produce death. The state introduced some other testimony as to an experiment with the same car that the defendant was driving the night of the accident down the hill, which

testimony was objected to by the defendant as being incompetent, irrelevant, and immaterial.

On behalf of the defendant, Tom Gill, a brother of the defendant, was called and testified, in substance, that he was riding with his brother, John Gill, on their way from Ryan to Waurika at the time the accident occurred, and "we were driving at about 35 miles an hour as we approached the filling station just south of the top of the hill and cut off the feed and reduced the speed to about 18 or 20 miles an hour; I did not see the truck at all; the deceased stepped in front of the car driven by the defendant when the car was about 10 or 12 feet of deceased; the defendant swerved the car to the left and endeavored to miss the truck; it seemed to me we were in about the center of the road; I said to the defendant, it looks like a man; about that time we hit an object in front of the car; the defendant stopped his car after we had passed the foot of the hill and we briefly discussed what we should do. It was dark and we heard no voices or exclamations and we thought possibly it was hijackers and decided not to go back."

The defendant offered to prove that a short while before John Hodges started to Waurika with R. A. Grimes he was under the influence of intoxicating liquor, and had whisky in his possession. The court sustained the objection of the state to this testimony, and the defendant excepted.

The defendant in his own behalf testified, in substance, that he was a farmer and worked at day labor; at the time the accident occurred he was working at an oil mill at Ryan and was on his way home; he was acquainted with John Hodges; "the speedometer on my car had not been working for some time, and I ordinarily drove at the rate of 25 miles an hour; at the time I reached

the filling station at the top of the hill I was driving about 25 miles an hour and slowed down to possibly 18 or 20; the light shined on the truck as I was coming around the curve, but I only saw it for an instant and did not see it after I turned my car to the left and at the time I was passing the same;" he would say he was about 200 feet away at the time he saw the truck.

Connie Ray also testified, as a rebuttal witness for the state, with reference to the condition of the Durant six cylinder the defendant was driving at the time he struck the deceased, and stated, "I drove this car over the same road that the defendant was driving at the time the accident occurred." This testimony was given over the objection of the defendant, and witness stated he had been in the automobile business for three years; "I had driven this car before, and I started down the hill with the car 25 miles an hour and passed the first curve and about half way down the hill I threw the brakes on, it was running about 35 miles then, putting on the brakes did not have any effect on it and did not stop the car; I was coasting from the top of the hill until I put on the brakes; I put on the brakes at the place where I was shown deceased was struck; I finally stopped the car at the foot of the hill; I stopped the car as soon as I could."

This is, in substance, all the testimony we deem necessary to set out to arrive at a proper decision.

The defendant has assigned seven errors alleged to have been committed by the trial court, the first being that the court erred in overruling his motion for a new trial. This assignment of error is the only one we deem necessary to consider, as the motion for new trial embraced all the grounds set forth in the other assignments of error.

The defendant argues at length that the evidence in this case does not justify a conviction. It is not denied by the defendant that his car struck the deceased and killed him. The defendant urges that the accident could not be avoided, and that the deceased when he came in front of his car was so near that the defendant could not stop his car in time to prevent the collision with the deceased. The testimony shows the scene of the accident was on a winding road and from the direction the defendant was approaching the truck in which the deceased had been riding the defendant was traveling down grade. The testimony is in conflict as to the rate of speed the defendant was traveling at the time he struck the deceased. The defendant urges that this accident occurred without the negligence of the defendant, and that, if any one was negligent, it was the deceased; that the deceased knew the car was coming from the south and that it was going to pass him, and the deceased went from the southeast corner of his truck to the southwest corner of the truck. The state urges that the testimony shows that the defendant was driving at an unusual rate of speed along a dangerous highway, and that he was not using such care as is required to drive a car upon public highways in order to protect the life and safety of pedestrians who are traveling on the highway, and that the defendant by his reckless driving was guilty of culpable negligence. The testimony shows that the brakes on the car the defendant was driving were in a very bad condition; that the collision occurred on a public highway, one of the main avenues of travel running south through the state; that the defendant knew this was a public traveled highway, and that he started down the slope of this hill at a speed of 25 miles an hour, and with only one light on his car burning.

The question in this case the jury had to determine was the question as to whether or not the defendant at the time of the accident was driving in such a reckless and careless manner, and at such a rate of speed as to endanger the lives of pedestrians, and, after considering all the evidence under the instructions of the court, a verdict of guilty of manslaughter in the second degree was returned.

This court has repeatedly held that, where there was any competent testimony, though conflicting, this court would not disturb the verdict of the jury. We hold there was sufficient testimony to warrant the court in submitting the question to the jury, and, the jury having arrived at a verdict of guilty on conflicting testimony, this court will not disturb the same.

After an examination of the entire record we hold that defendant was occorded a fair and impartial trial; that the court properly instructed the jury as to the law; and that the errors complained of are not sufficient to justify a reversal of this case.

The judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.